UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOMAIEH BAHRAMI, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ANTONY J. BLINKEN, *et al.*,<br><br>*Defendants*. | Case No. 1:23-cv-1477 (ACR) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Amjad Bahrami and Mahvash Arman are Iranian citizens who have applied for immigrant visas to join their daughter (and fellow Plaintiff) Somaieh Bahrami in the United States. In December 2022, consular officers refused their applications pending further administrative processing. After five months without further developments, Plaintiffs joined the throng of litigants in this District challenging visa-processing delays. Understandable as Plaintiffs' frustration may be, their Complaint does not state any plausible claims. The Court therefore dismisses this case without prejudice.

### I.   BACKGROUND

**A.   Legal Background**

A U.S. citizen who wants to help a noncitizen relative obtain lawful permanent resident status may file an I-130 Petition for Alien Relative with U.S. Citizenship and Immigration Services (USCIS), a subagency of the Department of Homeland Security. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154; 8 C.F.R. § 204.1(a)(1). If USCIS approves the petition and the beneficiary relative is outside the United States, the agency forwards the case to the State Department's National Visa Center (NVC) for processing. 8 C.F.R. § 204.2(a)(3). The

1

beneficiary relative must then submit additional paperwork, including a visa application form. *See* 22 C.F.R. §§ 42.62-.63; 9 Foreign Affs. Manual § 504.1-2(b), https://fam.state.gov/FAM/ 09FAM/09FAM050401.html [https://perma.cc/7DG5-UD2N].  Once the applicant (that is, the beneficiary relative) meets those requirements, the NVC coordinates with the appropriate consulate or embassy to schedule the applicant for a required consular interview.  *See* 22 C.F.R. § 42.62; 9 Foreign Affs. Manual § 504.1-2(b)-(d).

Following the interview, the consular officer "must" generally either "issue the visa" or "refuse the visa."[1]  22 C.F.R. § 42.81(a).  If the consular officer determines that "additional information . . . may help establish an applicant's eligibility," she may, "in accordance with [State] Department procedures," refuse the visa pending "further administrative processing." *Administrative Processing Information*, U.S. Dep't of State, https://travel.state.gov/content/ travel/en/us-visas/visa-information-resources/administrative-processing-information.html [https://perma.cc/GFW4-VHJF].

**B.     Factual Background**

The Court takes the facts from Plaintiffs' Complaint.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

Plaintiff Somaieh Bahrami is a U.S. citizen who lives in the United States.  Dkt. 1 (Compl.) ¶¶ 26, 99.  Her parents, Plaintiffs Amjad Bahrami and Mahvash Arman, are Iranian citizens who live in Iran.  *Id.* ¶¶ 27-28, 74-75.  In May 2019, Somaieh Bahrami filed an I-130 petition on her parents' behalf.  *Id.* ¶ 76.  In or around October 2019, USCIS approved the

---

[1] The consular officer must instead "discontinue granting the visa" if the applicant's country is subject to visa sanctions under 8 U.S.C. § 1253(d).  22 C.F.R. § 42.81(a).  No party argues that such sanctions apply here.

petition and forwarded the case to the NVC.[2]  *Id.* ¶ 77.  The parent-Plaintiffs "submitted . . . [o]nline . . . [v]isa [a]pplication" forms on December 31, 2021.  *Id.* ¶ 80.  Consular officials at the U.S. Embassy in Yerevan, Armenia, interviewed the parent-Plaintiffs on December 5, 2022.  *Id.* ¶ 81.  After the interview, Plaintiffs received notices "that the 'application[s] ha[d] been refused . . . pending further administrative processing.'"  *Id.* ¶ 83.  At consular officials' request, the parent-Plaintiffs "promptly" submitted additional information.  *Id.* ¶¶ 84-85.  Plaintiffs have since "inquired as to the status of [the] . . . applications multiple times" but have learned only that the "case is still pending administrative processing."  *Id.* ¶ 89.  In the interim, Plaintiffs have suffered "severe emotional distress and psychological harm" due to their separation.  *Id.* ¶ 97.  In addition, the parent-Plaintiffs "are members of the Kurdish and Sunni minority in Iran, which results in [their] being treated as second-class citizens."  *Id.* ¶ 100.  And Plaintiffs have experienced "financial strain" from maintaining separate households and have "spent a considerable amount of money on legal expenses" related to the visa applications.  *Id.* ¶¶ 101-02.

      **C.**     **Procedural Background**

Plaintiffs filed this case against the Secretary of State, Antony Blinken; the Acting Deputy Assistant Secretary and Managing Director for Visa Services in the State Department's Bureau of Consular Affairs, Julie Stufft; and the Consul General of the U.S. Embassy in Yerevan, Stephanie Zakhem, in May 2023.  Compl.  Citing both the Administrative Procedure Act (APA), 5 U.S.C. §§ 555(b), 706, and the Mandamus Act, 28 U.S.C. § 1361, the Complaint asserts that the delay in adjudicating the parent-Plaintiffs' applications is unreasonable and requests an order requiring prompt adjudication.  Compl. ¶¶ 109-55; *id.* at 29-30.  In October

---

[2] The Complaint does not give exact dates for USCIS's actions, but an exhibit to the Complaint lists the parent-Plaintiffs' State Department cases as having been "[c]reated" on October 29, 2019.  Dkt. 1-2.

2023, Defendants moved to dismiss the Complaint, Dkt. 8 (Mot.), and Plaintiffs moved to compel Defendants to produce an administrative record, Dkt. 9.  Each side opposed the other's motion, Dkts. 10 (Opp.), 11, and replied in support of its own, Dkts. 12, 13.

## II.     LEGAL STANDARD

Defendants' Motion seeks dismissal both under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.

When a defendant moves to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction.  *E.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Where, as here, "the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations," *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000), the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co.*, 642 F.3d at 1139 (cleaned up).

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (cleaned up).  To meet that standard, a plaintiff's allegations must support a "reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (cleaned up).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (cleaned up).

4

### III.     ANALYSIS

Defendants argue both that Plaintiffs lack standing to sue Secretary Blinken and that the Complaint does not state any plausible claims.[3] The Court rejects the first argument but agrees with the second. And, since an administrative record is not necessary to reach those conclusions, the Court denies Plaintiffs' Motion to Compel.

### A.     Plaintiffs Have Sued Appropriate Defendants

Defendants contend that Plaintiffs lack standing—which requires, among other things, "that a favorable decision will likely redress" Plaintiffs' injuries, *City of Scottsdale v. FAA*, 37 F.4th 678, 679 (D.C. Cir. 2022) (cleaned up)—to sue Secretary Blinken because he cannot "favorably adjudicate an application for a visa." Mot. at 5. This Court, like many (though not all) others in this District, has previously rejected this argument, and it stands by that conclusion. *See Rashidian v. Garland*, No. 23-cv-1187, 2024 WL 1076810, at *4 (D.D.C. Mar. 8, 2024); *see also, e.g.*, *Sharifymoghaddam v. Blinken*, No. 23-cv-1472, 2024 WL 939991, at *3 (D.D.C. Mar. 5, 2024). *But see Nusrat v. Blinken*, No. 21-cv-2801, 2022 WL 4103860, at *4 (D.D.C. Sept. 8, 2022) (finding no standing to sue Secretary Blinken). "[W]hile the Secretary of State has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing them to decide pending applications within a reasonable time," and an order requiring him to do so would likely redress Plaintiffs' injuries by ending the challenged delay. *Rashidian*, 2024 WL 1076810, at *4 (quoting *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023)). Plaintiffs thus have standing to sue Secretary

---

[3] Defendants also argue that the consular nonreviewability doctrine bars Plaintiffs' claims. Mot. at 6-9. The Court has previously explained that it need not address that nonjurisdictional argument before dismissing a visa-delay case on other merits grounds, *see Rashidian v. Garland*, No. 23-cv-1187, 2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024), and sticks to that approach here.

Blinken. And, although Defendants' Motion does not mention Acting Deputy Assistant Secretary Stufft or Consul General Zakhem, the Court notes that the reasoning above extends to them, since Plaintiffs allege that they too are responsible for overseeing consular activities and supervising consular officers. Compl. ¶¶ 30-31. The Court therefore will not dismiss this case for lack of jurisdiction.

### B.   Plaintiffs Have Not Stated Plausible Unreasonable-Delay Claims

The Court turns to the merits of Plaintiffs' unreasonable-delay claims under the APA and the Mandamus Act. "[T]he central question" under both statutes is "whether the agency's delay is so egregious as to warrant mandamus." *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *6 (D.D.C. Jan. 30, 2024) (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

To answer that question, courts in this Circuit consider the six "*TRAC*" factors, drawn from the D.C. Circuit's decision in *Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70 (D.C. Cir. 1984): (1) "[T]he time agencies take to make decisions must be governed by a rule of reason"; (2) "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"; (4) "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority"; (5) "the court should also take into account the nature and extent of the interests prejudiced by delay"; and (6) "the court need not find any impropriety lurking

6

behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id.* at 80 (cleaned up). "These considerations are often grouped into four basic inquiries":

> First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Khazaei*, 2023 WL 6065095, at *6 (cleaned up).

As a threshold matter, Plaintiffs contend that the *TRAC* analysis is too "fact-based" to resolve at the motion-to-dismiss stage. Dkt. 10 at 27; *accord* Dkts. 14, 15, 16, 18, 19. While Plaintiffs cite a smattering of primarily out-of-circuit case law taking that view, *see, e.g.*, Dkt. 18 at 2-3 (citing *Li v. Blinken*, No. 8:23-cv-2142, 2024 WL 2107341 (C.D. Cal. Apr. 4, 2024)), "binding precedent from the D.C. Circuit—not to mention a cavalcade of case law from this District"—points the other way, *Yazdanpanahderav v. U.S. Dep't of State*, No. 23-cv-3688, 2024 WL 3010874, at *4 (D.D.C. June 14, 2024); *see Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340-46 (D.C. Cir. 2023) (affirming dismissal of visa-delay case for failure to state claim based on *TRAC* factors); *Yazdanpanahderav*, 2024 WL 3010874, at *4 n.4 (collecting cases from this District). "Unsurprisingly so, since the Court has ample facts to which to apply the *TRAC* factors—those alleged in the Complaint, with all reasonable inferences drawn in Plaintiffs' favor." *Yazdanpanahderav*, 2024 WL 3010874, at *4; *see Iqbal*, 556 U.S. at 678. Conducting that analysis, the Court concludes that, taken together, the *TRAC* factors do not plausibly weigh in Plaintiffs' favor, making dismissal appropriate. *See Da Costa*, 80 F.4th at 340-46.

### 1.     *TRAC* factors one and two

The first two factors consider whether the agency is following a "rule of reason," "congressionally prescribed or otherwise," *Khazaei*, 2023 WL 6065095, at *6 (cleaned up).  In analyzing visa-delay cases, the D.C. Circuit has placed greater weight on the first factor (whether the agency follows a "rule of reason") than the second (whether Congress has provided an "indication of the speed with which it expects the agency to proceed").  *TRAC*, 750 F.2d at 80 (cleaned up); *see Da Costa*, 80 F.4th at 340 (identifying *TRAC* factors one and four as "most important").  Taken together, the first two factors favor dismissal.

As to the first *TRAC* factor, Plaintiffs have not plausibly alleged that the agency does not follow a rule of reason.  An agency "employs a rule of reason" when it processes immigration applications on a "first-in, first-out" basis, *Da Costa*, 80 F.4th at 340-41, and "[c]ourts in this jurisdiction often look to the length of delay as a rough yardstick to determine whether that 'first-in, first-out' rule is, in fact, being applied," *Khoshrou v. Blinken*, No. 22-cv-2859, 2023 WL 4930086, at *5 (D.D.C. Aug. 2, 2023); *accord, e.g.*, *Barazandeh*, 2024 WL 341166, at *8 ("Absent a congressionally supplied yardstick, courts typically turn to [case law] as a guideline." (cleaned up)).  Case law confirms that the delay here is neither unusual nor inconsistent with a rule of reason.  Visa processing inevitably "takes a baseline amount of time," and "courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."  *Khazaei*, 2023 WL 6065095, at *6.  The delay here—roughly twenty months since the parent-Plaintiffs' interviews and placement in administrative processing—is comparable to or shorter than those that courts

have found reasonable in similar cases.[4]  *See, e.g.*, *Barazandeh*, 2024 WL 341166, at *7-8 (twenty-month delay).  The Court thus has no reasonable basis on which to conclude that the agency is not processing applications in an orderly way.

Plaintiffs' counterarguments are unpersuasive.  First, Plaintiffs observe that "just because a delay is not unusual does not make it reasonable."  Opp. at 31.  True enough.  But the first *TRAC* factor requires the Court to assess whether the agency is following a rule of reason, and the only nonconclusory factual allegation that Plaintiffs—who bear the burden of pleading plausible claims—cite to show that the agency is not doing so is the length of the delay.  That the delay is not unusual undermines Plaintiffs' argument.

Second, Plaintiffs argue that at least some decisions holding that extended visa-processing delays were reasonable were products of the COVID-19 pandemic and are no longer informative.  Opp. at 31-32.  Several of those decisions, however, are quite recent and involved plaintiffs who applied and interviewed for visas at roughly the same time as Plaintiffs.  *See Janay v. Blinken*, No. 23-cv-3737, 2024 WL 3432379, at *1-2 (D.D.C. July 16, 2024);

---

[4] "There is some question as to whether the period of delay should be measured from the initial visa application or from the most recent government action," *Janay v. Blinken*, No. 23-cv-3737, 2024 WL 3432379, at *11 (D.D.C. July 16, 2024) (cleaned up), and "whether the relevant end date is the day of the case's filing or the day of the decision," *Shahnia v. U.S Dep't of State*, No. 23-cv-2337, 2024 WL 3202225, at *3 n.6 (D.D.C June 27, 2024).  This debate is largely academic; the important point is to use the same method for measuring delay when comparing cases.  And, regardless of the end dates used, the delay here is not unusual.  For example, were the Court instead to measure the delay from December 31, 2021, when the parent-Plaintiffs filed their visa applications—roughly 17 months before this case's filing and 31 months from today—the delay still would not stand out compared to those upheld in other cases.  *Cf., e.g.*, *Janay*, 2024 WL 3432379, at *11 (dismissing claims where plaintiffs applied for visas 26 months before filing suit and 33 months before decision).  The Court does, however, reject Plaintiffs' argument that the delay began when Plaintiffs submitted their I-130 petition to USCIS in 2019.  *See* Opp. at 2.  "Plaintiffs do not allege any delays in the processing of their I-130 petition, which was approved" in 2019 by a different agency than the one responsible for the current alleged delay.  *Janay*, 2024 WL 3432379, at *11 n.6 (rejecting same argument).

*Barazandeh*, 2024 WL 341166, at *1-2. Nor do Plaintiffs provide "reason to think that the State Department's processing capacity has fully recovered from any pandemic-created backlog." *Yazdanpanahderav*, 2024 WL 3010874, at *5.

Third, in a "Notice of Change in Material Facts" submitted after their Opposition, Plaintiffs cite two declarations by a State Department official, filed in different cases in this District, which discuss the Department's handling of certain visa-related security requests and, in Plaintiffs' view, show that the Department does not process those requests in an orderly way. Dkt. 17. The Court rejects this argument for at least two reasons. First, the declarations, which Plaintiffs' Complaint does not reference or otherwise incorporate, "are not properly before the Court on a motion to dismiss [for failure to state a claim]." *Janay*, 2024 WL 3432379, at *11. Second, the Complaint nowhere references the security screening discussed in the declarations or alleges that such screening is the cause of the delay here. *See id.*

Pivoting to the second *TRAC* factor, Plaintiffs cite several statutes, as well as a State Department publication, that, they contend, provide an "indication of the speed with which [Congress] expects the agency to proceed." *TRAC*, 750 F.2d at 80. At most, Plaintiffs' authorities show that the second factor "somewhat favors" them, but not enough to outweigh the first. *Da Costa*, 80 F.4th at 344.

Plaintiffs look first to 8 U.S.C. § 1571, which provides:

> It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition.

8 U.S.C. § 1571(b). That language, however, "appears in a section directed not to consular officials but to the Immigration and Nationality Service (INS), a since-dissolved agency distinct

10

from the State Department whose functions have largely transferred to entities within the Department of Homeland Security." *Rashidian*, 2024 WL 1076810, at *7. And the language is precatory, rather than binding. *See Da Costa*, 80 F.4th at 344 (observing that § 1571(b) "is insufficient to set a deadline"). Although the D.C. Circuit has reasoned that—at least in the context of a suit against USCIS (a component of the INS's successor agency, the Department of Homeland Security)—this provision "somewhat" helps a plaintiff who has waited more than 180 days for an immigration benefit, it has also held that the delay must reach an egregious "level of disproportionality" to justify relief. *Id. Da Costa*, for example, concluded that, even considering the 180-day period given in § 1571, a delay of four-and-a-half years in processing an immigration petition was reasonable. *Id.* at 342, 344, 346. The far shorter delay here does not reach the requisite "level of disproportionality." *Id.* at 344.

> Plaintiffs also point to a provision in a 1999 appropriations bill that states:
>
> > POLICY.—It shall be the policy of the Department of State to process immigrant visa applications of immediate relatives of United States citizens and nonimmigrant K-1 visa applications of fiancés of United States citizens within 30 days of the receipt of all necessary documents from the applicant and the Immigration and Naturalization Service.

Act of Nov. 29, 1999, Pub. L. No. 106-113, § 237(a), 113 Stat. 1501, 1501A-430. The State Department's Foreign Affairs Manual reiterates that "[t]he Department expects all [immigrant visa] units to strive to meet the 30[]-day requirement[]." 9 Foreign Affs. Manual § 504.7-2(b), https://fam.state.gov/FAM/09FAM/09FAM050407.html [https://perma.cc/4Z3N-W6N5]. As Judge Moss recently explained, "[i]n relying on these provisions . . . Plaintiffs face two problems." *Janay*, 2024 WL 3432379, at *12. "First, the [statute] merely requires that the Department 'process' the applications within 30 days, but it does not require a final adjudication of the application within that period." *Id.* Plaintiffs do not dispute that the State Department has

11

taken some steps toward processing their applications, including by interviewing the parent-Plaintiffs. *See id.*; *see also* 9 Foreign Affs. Manual § 504.7-2(b) (describing the interview as "the most significant part of the visa issuing process"). Second, a policy is not a binding "rule or command." *Janay*, 2024 WL 3432379, at *12. So while these sources, like § 1571(b), arguably help Plaintiffs "somewhat" with the second *TRAC* factor, Plaintiffs would need to show a significant "level of disproportionality" to meaningfully advance their cause. *Da Costa*, 80 F.4th at 344. For the reasons described above, this case has not reached that level.

On balance, the first two *TRAC* factors point Defendants' way.

### 2. *TRAC* factor four

The fourth factor, "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, "carries significant weight," *Barazandeh*, 2024 WL 341166, at *9, and cuts heavily in Defendants' favor. The D.C. Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting [a party] at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up). Plaintiffs seek precisely this type of relief. "Consular processing capacity is . . . a zero-sum game, so granting [Plaintiffs] relief would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own." *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *6 (D.D.C. Feb. 12, 2024) (cleaned up); *accord Da Costa*, 80 F.4th at 343-44. "Any such reordering of the queue of applicants seeking adjudication would be inappropriate . . . because there would be no

demonstrable net gain in visa processing at large."[5]  *Ahmadi*, 2024 WL 551542, at *6 (cleaned up); *accord Da Costa*, 80 F.4th at 343-44.

Plaintiffs respond that "there is no line" and that, even if there is, enough time has passed that they should be at the head of it.  Opp. at 36-38.  Plaintiffs cite no basis in the Complaint for the former argument, which conflicts with both common sense and the bevy of cases in this District alone challenging visa-processing delays at the U.S. Embassy in Yerevan and elsewhere.  *See, e.g.*, *Shahnia v. U.S Dep't of State*, No. 23-cv-2337, 2024 WL 3202225, at *1 (D.D.C June 27, 2024); *Janay*, 2024 WL 3432379, at *13 (rejecting same argument); *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").  And the latter argument merely "beg[s] the question, assuming that the wait time to date is unreasonable and could not result from competing priorities and legitimate agency needs."  *Rashidian*, 2024 WL 1076810, at *8.  "Contrary to that assumption, the Court has already explained that the length of the delay, standing alone, favors Defendants."  *Id.*; *see supra* Section III.B.1.

Plaintiffs also assert that Congress and the State Department have declared immediate-relative visa applications, like theirs, to be a priority.  Opp. at 37.  But that does not solve the line-jumping problem.  Even if Congress and the State Department intended that visa

---

[5] Plaintiffs cite the D.C. Circuit's observation in *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807 (D.C. Cir. 2024), that "generalized appeals to resource constraints" "can go only so far" in the context of *TRAC* factor four.  *Id.* at 819; Dkt. 19 at 3.  But that decision emphasized that, because the plaintiffs sought relief on behalf of a class of visa applicants, "there [was] no" "concern[]" about line-jumping."  *Afghan & Iraqi Allies*, 103 F.4th at 819 (cleaned up).  In contrast, where plaintiffs have sought individual relief that *would* result reorder an applicant queue, the D.C. Circuit has concluded that "*TRAC* factor four . . . strongly disfavors" judicial intervention.  *Da Costa*, 80 F.4th at 343-44.

applications in this category be processed before all applications of other types, regardless of submission order—a dubious proposition—the relief Plaintiffs seek would work to the detriment of other applicants within the same priority category, as well as those outside it. *See Rashidian*, 2024 WL 1076810, at *8 (explaining that "moving Plaintiffs to the front of the queue of [a purported priority category of visa] applicants would still result in judicial line-reordering"). The fourth *TRAC* factor "weighs against judicial intervention." *Da Costa*, 80 F.4th at 344.

### 3.     *TRAC* factors three and five

*TRAC* factors three and five, which examine "the interests prejudiced by delay," including the effect on "human health and welfare," *Da Costa*, 80 F.4th at 344 (quoting *TRAC*, 750 F.2d at 80), arguably favor Plaintiffs but are not enough to swing the balance. Plaintiffs describe "severe emotional distress and psychological harm" from their ongoing separation, Compl. ¶ 97, and "financial strain" from legal expenses and the cost of maintaining separate households, *id.* ¶¶ 101-02. They also assert—without elaboration—that the parent-Plaintiffs are "treated as second-class citizens" in Iran. *Id.* ¶ 100. Courts in this District have concluded that similar allegations tilted these factors in other plaintiffs' favor, if only narrowly. *See, e.g.*, *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 77 (D.D.C. 2022) (finding that the third and fifth *TRAC* factors "slightly" favored a visa-delay plaintiff based on an allegation that the delay "'had a profound and negative impact' on his life"). *But see Da Costa*, 80 F.4th at 344-45 (concluding that these factors did not favor visa-delay plaintiffs). But, while Plaintiffs' distress is understandable, "many others facing similar circumstances" are suffering similar harms. *Siddiqui*, 646 F. Supp. 3d at 77 (cleaned up). As recent decisions from this District illustrate, delays in visa processing separate and financially burden many families. *See, e.g.*, *Rashidian*, 2024 WL 1076810, at *2, 9. Many visa applicants also face difficult circumstances in their

14

home countries, and Plaintiffs' Complaint does not describe in any detail what it means that the parent-Plaintiffs are "treated as second-class citizens" in Iran. *Cf. Da Costa*, 80 F.4th at 345 (reasoning that plaintiffs' allegations did not sufficiently describe individual circumstances to prevail on these factors). Without more unusual or urgent injuries, the third and fifth *TRAC* factors do not justify the Court's overruling the agency's priorities and moving Plaintiffs to the head of the line. *See Da Costa*, 80 F.4th at 344-45.

        **4.**     ***TRAC* factor six**

The sixth *TRAC* factor concerns whether "any impropriety lurk[s] behind agency lassitude." *TRAC*, 750 F.2d at 80 (cleaned up). "Both sides think [this] factor . . . helps their cause," but "[n]either is right." *Yazdanpanahderav*, 2024 WL 3010874, at *6. This factor is neutral. *See Da Costa*, 80 F.4th at 345-46.

Defendants argue that their "good faith . . . in addressing the delay weighs against relief." Mot. at 18 (cleaned up). "But, even assuming Defendants have shown such good faith, the D.C. Circuit has held that, without *bad* faith, this factor is neutral." *Yazdanpanahderav*, 2024 WL 3010874, at *6 (citing *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 820 (D.C. Cir. 2024)).

Plaintiffs make two unpersuasive arguments. First, they contend that the length of the delay—combined with the hardships that that delay has created—demonstrates "extreme bad faith." Opp. at 39. That contention runs into the same problem as Plaintiffs' earlier appeals to the length of the delay: the Court has already explained that the wait time thus far cuts *against* Plaintiffs' claims. *See supra* Section III.B.1. Second, they assert that "Defendants' . . . Motion . . . is riddled with truckloads of factual errors and legal misrepresentations" from which the Court should infer bad faith. Opp. at 39. That argument has several holes. While Defendants' Motion does contain some errors—for instance, its standing analysis focuses largely

15

on officials whom Plaintiffs did not actually sue, *see* Mot. at 4-5—"truckloads" is an exaggeration, and sloppiness is a more reasonable inference than bad faith.  And, in any event, Plaintiffs cite no authority for the proposition that the good or bad faith of defense counsel in a delay suit is relevant to the sixth *TRAC* factor.  Nor does that proposition appear correct: the factor focuses on "agency lassitude," not the conduct of counsel, and the Court does not see why the reasonableness of an agency's delay should turn on whether a plaintiff happens to sue and defense counsel happens to behave badly.  *TRAC*, 750 F.2d at 80 (cleaned up).  Plaintiffs' argument makes particularly little sense in the context of a Rule 12(b)(6) motion, for which the Court must ordinarily look only to the allegations in the pleadings.  *See Iqbal*, 556 U.S. at 678.  Plaintiffs' Complaint says nothing about the conduct of defense counsel, nor could it have.  The upshot is that Plaintiffs have not plausibly alleged bad faith or impropriety, and "[t]his factor does not move the needle."  *Yazdanpanahderav*, 2024 WL 3010874, at *6.

*    *    *

Taken collectively, the *TRAC* factors do not plausibly point Plaintiffs' way, and their unreasonable-delay claims therefore fail.

### C.   Plaintiffs' Motion to Compel

Plaintiffs move to compel Defendants to produce an administrative record (or at least a list of its contents) pursuant to Local Civil Rule 7(n).  Dkt. 9.  That Rule provides: "In cases involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record . . . simultaneously with the filing of a dispositive motion . . . ."  LCvR 7(n)(1).  Courts in this District have disagreed as to whether the Rule applies in cases, like this one, challenging agency inaction.  *Compare, e.g.*, *Tahavori v. Blinken*, No. 23-cv-1460, 2024 WL 1328546, at *2 (D.D.C.

Mar. 28, 2024) (potentially yes), *with, e.g.*, *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 164 n.5 (D.D.C. 2021) (no).

The Court need not pick a side in that debate because, even assuming the Rule does apply, the Court waives compliance. As the Court's analysis thus far demonstrates, "the administrative record is unnecessary to decide the threshold legal questions presented by the pending motion to dismiss, including whether Plaintiffs have plausibly alleged unreasonable delay." *Janay*, 2024 WL 3432379, at *3 (denying similar motion to compel in visa-delay case). And since the Court dismisses Plaintiffs' claims, it will not need the record at later stages of this case. The Court therefore denies Plaintiffs' Motion to Compel.

## IV.   CONCLUSION AND ORDER

The Court sympathizes with Plaintiffs' situation. But their Complaint does not state any plausible claims, and so the Court must dismiss this case.

For these reasons, the Court hereby **DENIES** Plaintiffs' Motion to Compel, Dkt. 9; **GRANTS** Defendants' Motion to Dismiss, Dkt. 8; **DISMISSES** Plaintiffs' Complaint, Dkt. 1, and this case without prejudice; and **DIRECTS** the Clerk of Court to close this case.

**SO ORDERED.**

This is a final appealable Order. *See* Fed. R. App. P. 4(a).

Date:   August 2, 2024                                    _____
                                                          ANA C. REYES
                                                          United States District Judge